Anthony P. GOLUSZEK, Plaintiff,

v.

H.P. SMITH, Defendant.

No. 86 C 8412.

United States District Court,
N.D. Illinois, E.D.

July 15, 1988.

Claudia Oney, Chicago, Ill., for plaintiff.

Judith M. Janssen, James W. Gladden, Jr., Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

In this Title VII case, the plaintiff Anthony Goluszek claims that he was the victim of sexual harassment by other males who worked for the defendant H.P. Smith. He also claims that H.P. Smith fired him because (1) he is Polish and (2) in retaliation for his complaining about the sexual harassment. In this opinion, the court addresses the merits of H.P. Smith's motion for summary judgment.

### Facts [1]

Anthony Goluszek has never been married nor has he lived anywhere but at his mother's home. According to Goluszek's psychiatrist, Goluszek comes from an "unsophisticated background" and has led as "isolated existence" with "little or no sexual experience." Goluszek "blushes easily" and is abnormally sensitive to comments pertaining to sex. Plaintiff's Exhibit ("PX") A.

H.P. Smith is a division of James River Corporation engaged in the business of treating paper with a polyethylene coating for use as freezer wrap and the like. In December of 1976 H.P. Smith hired Goluszek as an electronic maintenance mechanic whose job was to maintain and repair the machines used in production. While he worked at H.P. Smith, Goluszek was represented by Local 714 of the International Brotherhood of Teamsters[2] and his employment was governed by the union's collective bargaining agreement with H.P. Smith. A subsection of Section 11 of that agreement provides that an employee's "[w]illfully creating avoidable waste of time or material" constitutes a just cause for discharge. Goluszek Deposition Exhibit ("Dep. X.") 18a at 22.

Shortly after Goluszek started at H.P. Smith in December of 1976, a number of machine operators questioned him as to why he had no wife or girlfriend and joked that one had to be married to work there. One year later, the same operators told him that if he could not fix a machine, they would call his "daddy" in. Apparently the operators were referring to Goluszek's supervisor Michael Byczek who, like Goluszek, is of Polish descent. Goluszek reported the latter incident to his night supervisor Cal Adair. Adair responded by using the same remark the operators had used regarding Goluszek's "daddy." In 1978, Adair on one occasion told Goluszek that if Goluszek could not fix a machine he would be sent to a sausage factory. Adair also said Goluszek needed to "get married and get some of that soft pink smelly stuff that's between the legs of a woman." Goluszek responded that Adair should not comment on Goluszek's personal life. PX B.

In the spring of 1979, certain operators told Goluszek he should get married and that he should go out with another employee named Carla Drucker[3] because she "fucks." Goluszek reported this to Adair whose response was that if Goluszek did not fix a machine they would get "Carla Drucker to fix Tony." PX B.

Sometime subsequently in 1979, H.P. Smith transferred Goluszek to the day shift. On a number of occasions on this shift, employees driving jeeps threatened to knock Goluszek off of his ladder. Goluszek complained about this practice to Byczek and to the General Manager John Van Buskirk. They assured him the mat-

---

1. The parties submitted their statements of uncontested and contested facts. N.D.Ill.Gen.R. 12. Pursuant to local rule and for purposes of the defendant's motion, the court treats as admitted any factual assertion not expressly controverted by the opposing party.

2. Local 714 was originally a defendant in this action, but on January 7, 1988 pursuant to a stipulation the court dismissed all claims against the union with prejudice.

3. This is a pseudonym. The actual name is being withheld to prevent embarrassment to that employee.

ter would be investigated. Goluszek also filed a grievance with Local 714 which the union declined to pursue. He then sent a copy of his grievance to the National Labor Relations Board which in turn directed him to the Occupational Safety and Health Commission ("OSHA"). After an investigation, OSHA informed Goluszek by letter that it had found no violation and that H.P. Smith was observing appropriate safety measures.

On October 16, 1980, Plant Engineer J.R. Macfarlane issued a warning to Goluszek regarding Goluszek's careless installation of a ballast in a light fixture. Macfarlane warned that continued poor performance would lead to termination.

Subsequently Goluszek requested a meeting which was held on December 4, 1980. Plant Manager Jim Rooney and Byczek were present. Goluszek complained about the Macfarlane reprimand and the danger forklift drivers presented to him. He even threatened court action. A similar meeting was held with Van Buskirk and others on February 27, 1981. Van Buskirk later by letter informed Goluszek that his allegations were without substance and warned that "a continuation of actions on [Goluszek's] part which result in personal unrest, employee antagonism, wastage of company material or time, is sufficient cause for [Goluszek's] termination." Goluszek Dep. X. 10.

H.P. Smith transferred Goluszek back to the night shift sometime in 1981. On that shift, the operators periodically asked Goluszek if he had gotten any "pussy" or had oral sex, showed him pictures of nude women, told him they would get him "fucked," accused him of being gay or bisexual, and made other sex-related comments. The operators also poked him in the buttocks with a stick. Goluszek complained to General Foreman Bill Clemente about the remarks, but Clemente did nothing. Goluszek has admitted that the employees on both shifts talked about sex with one another and used words such as "fuck" in those conversations. He also admits that comments about sex were made that were not directed at him. *E.g.,* Goluszek Dep. at 191–95.

In 1983 and 1984, a number of complaints arose regarding Goluszek's job performance. In May of 1983, Production Foreman Leo Karpinski (who also is Polish) issued a verbal warning to Goluszek because of Goluszek's failure to follow safety procedures and use protective sleeves. As a consequence of his neglect, Goluszek had been burned when working on a defective heater. On January 18, 1984, Karpinski gave Goluszek a written warning for wasting time by being out of the plant without permission on January 12, 1984.[4] Also in January of 1984 employee Roy Goytia complained to Clemente that Goluszek had been trying to get Goytia to complain about Karpinski. On January 26, 1984, Clemente spoke with Goluszek and Goytia at which time Goluszek complained that he was being harassed by employees "out there talking to me about butt fucking in the ass." Goluszek Dep. at 248. Clemente told Goluszek such statements were mere "shop talk." After Goluszek filed a grievance against Clemente, Clemente apologized. The grievance was eventually denied as untimely.

Goluszek's problems continued in April of 1984. On April 10, 1984, Goluszek received a warning for excessive tardiness, his third in three years. On April 11, 1984, Clemente and Karpinski found Goluszek with his feet up on the desk when he was supposed to be looking for a part. H.P. Smith suspended Goluszek for three days and warned that a similar incident would result in termination. Goluszek filed a grievance regarding the April 11 incident, but that grievance was dismissed when he failed to appear at the grievance meeting.

May of 1984 marked the end of Goluszek's employment with H.P. Smith. On May 8, 1984, Clemente issued him another written warning for being late four times in the prior twenty-seven days. On May 9, 1984,

---

**4.** Goluszek appears to believe that Karpinski filed the warning because Goluszek had filed a safety report against Karpinski regarding the latter's procedure for repairing a broken water hose. *See* PX C.

Goluszek took six hours to complete a project that normally took one to two.[5] On May 10, 1984, Goluszek admitted that he had not done any work for one and one-half hours. On May 14, 1984, Goluszek was absent from work without an excuse. The next day Goluszek again did nothing for an hour and a half despite being given a work order. Goluszek claims to have been looking for the requisite tools. On May 16, 1984, H.P. Smith suspended Goluszek indefinitely. Eventually H.P. Smith fired Goluszek and Goluszek's grievance was denied. Goluszek admits that the company followed its progressive discipline policy before subjecting him to discharge.

On April 21, 1984, H.P. Smith fired a Hispanic employee named Tony Luna for the same reason it fired Goluszek—willfully creating avoidable waste of time or material. But unlike Goluszek, Luna prior to his discharge had never been issued a three-day suspension or a final warning that further misconduct would be cause for discharge. H.P. Smith also failed to give Luna a chance to explain his actions. On May 21, 1984, H.P. Smith reinstated Luna.

Finally, some evidence exists that H.P. Smith reacted differently to female claims of sexual harassment than male claims. In a letter dated November 29, 1972, an H.P. Smith supervisor warned an employee regarding the latter's "harassing of a female employee." The letter warned that further harassment would lead to disciplinary action or even discharge. PX E.

Goluszek's complaint is divided into two counts. In Count I Goluszek claims that H.P. Smith sexually discriminated against him by refusing and failing to remedy and control the continuous use of sexual harassment directed toward him by fellow employees. Goluszek further alleges in Count I that H.P. Smith discharged him in retaliation for his attempts to stop such harassment. In Count II, Goluszek claims he is a victim of national-origin discrimination because even though both he and non-Polish employees had reported such harassment, H.P. Smith acted only on the non-Polish complaint. He also claims that he was

discharged by virtue of his Polish origin. In its motion for summary judgment, H.P. Smith argues that the evidence does not support Goluszek's claims of sexual harassment, retaliation and national-origin discrimination. The court will address each of these claims separately.

I

*Sexual Harassment*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). For purposes of Title VII, sex discrimination includes sexual harassment, of which there are two basic forms—(1) *quid pro quo* harassment in which a supervisor demands sexual consideration in exchange for job benefits and (2) hostile-environment harassment. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618–19 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). The Supreme Court recognized the latter form in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Court did little to define the parameters of a hostile-environment claim other than to state that the sexual harassment "must be sufficiently severe or pervasive 'to alter the condition of the victim's employment and create an abusive environment.'" *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). The Court did cite the Equal Employment Opportunity Commission's guideline on sexual harassment with approval. That guideline provides in relevant part that "unwelcome sexual-advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when ... such conduct has the purpose or effect of unreasonably interferring with an individual's work performance or creating and intimi-

5. Goluszek attributes the delay to his difficulty in finding a part. *See* PX C.

dating, hostile, or offensive work environment." 29 C.F.R. § 1604.11(a)(3) (1987). Moreover, the requirement remains that the plaintiff must demonstrate that but for the plaintiff's sex the plaintiff would not have been the object of harassment. *E.g., Rabidue*, 805 F.2d at 620; *Henson v. City of Dundee*, 682 F.2d 897, 903–04 (11th Cir. 1982).

■ H.P. Smith claims that Goluszek cannot prove that he was harassed because of his sex by his co-workers. Goluszek easily rebuts that argument, however, by citing the 1972 letter warning a male employee to lay off a female employee. *See* PX E. Although the letter is dated, the court considers it significant probative evidence of H.P. Smith's reacting differently to female complaints of sexual harassment than to male complaints. Reading the record as a whole, the court finds that a fact-finder could reasonably conclude that if Goluszek were a woman H.P. Smith would have taken action to stop the harassment, that such action would have stopped the harassment and that the harassment was pervasive and continuous from the time Goluszek began until he was fired.

■ The more convincing argument for dismissal is one H.P. Smith failed to make. Simply stated, the defendant's conduct was not the type of conduct Congress intended to sanction when it enacted Title VII. The goal of Title VII is equal employment opportunity. *Connecticut v. Teal*, 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982). That goal is accomplished in part by imposing an affirmative duty on employers to maintain a working environment free of discriminatory intimidation. *See* E.E.O.C. Dec. No. 74–05, 6 Fair Empl. Prac.Cas. (BNA) 834 (1973). The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv.L.Rev. 1449, 1451–52 (1984). Title VII does not make all forms of harassment actionable, nor does it even make all forms of verbal harassment with sexual overtones actionable. The "sexual harassment" that is actionable under Title VII "is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person." *Id.* at 1451. Actionable sexual-harassment fosters a sense of degradation in the victim by attacking their sexuality. *Id.* at 1455. In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex. *Cf. Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir.1986) ("Such severe harassment becomes discriminatory because it deprives the victim (usually female) of the right to participate in the work place on equal footing with others similarly situated").

During the times relevant to his claim, Goluszek was a male in a male-dominated environment. In fact, with the exception of the reference to a female employee in the letter, each and every one of the figures in this story was a male. The argument that Goluszek worked in an environment that treated males as inferior consequently is not supported by the record. In fact, Goluszek may have been harassed "because" he is a male, but that harassment was not of a kind which created an anti-male environment in the workplace. *Compare Rabidue*, 805 F.2d 611, 623 (Keith, J., dissenting) ("The overall circumstances of plaintiff's workplace evince an anti-female environment"). A wooden application of the verbal formulations created by the courts would salvage Goluszek's sexual-harassment claim. The court, however, chooses instead to adopt a reading of Title VII consistent with the underlying concerns of Congress and grants H.P. Smith summary judgment on that claim.

## II

### Retaliation

■ In Count I, Goluszek also claims that H.P. Smith fired him in retaliation for his having filed a charge of sexual harassment. "To establish a *prima facie* case of retaliatory discharge under 42 U.S.C. § 2000e–3, the plaintiff must show: (1) he

opposed an employment practice that was unlawful within the meaning of Title VII or he participated in a proceeding under Title VII; (2) he suffered an adverse action by his employer; (3) because of his opposition or participation." *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 280 (7th Cir. 1985) (citation and footnote omitted). If the plaintiff establishes a *prima facie* case, the burden of production shifts in the manner outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden of persuasion is with the plaintiff at all times. *Ibid.*

H.P. Smith first argues that Goluszek cannot show that he engaged in protected activity. Part I of this opinion indicates that is true, but "Section 2000e–3 does not require that the challenged employment practice actually violate Title VII; it is sufficient if the plaintiff has a reasonable belief that there is Title VII violation." *Jennings v. Tinley Park Community Consol. School Dist. No. 146*, 796 F.2d 962, 967 (7th Cir.1986) (citation omitted), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987). Since H.P. Smith did not argue that standard, the court cannot grant it summary judgment on that basis.

Nor can the court say that the record contains no evidence of a causal link between Goluszek's opposition to the harassment and his discharge. Certainly those who made the decision to fire Goluszek were aware of his multiple complaints. In light of that fact, the question of whether the nexus exists is a determination best left to the fact-finder. The same holds true for the remaining prongs of the *McDonnell Douglas* test.

### III

#### *National–Origin Discrimination*

 In Count II, Goluszek argues that H.P. Smith discriminated against him because he is Polish because (1) H.P. Smith responded to the harassment complaints of non-Polish employees and (2) H.P. Smith fired him because of his complaints. Goluszek, however, does not contest H.P. Smith's formulation of his burden on this claim. According to that formulation, an element of the *prima facie* case is a showing that similarly-situated less-qualified employees of non-Polish national origin were retained. Goluszek does not contest that H.P. Smith did not follow its progressive discipline policy for Luna but that H.P. Smith did for Goluszek. Since Goluszek has not identified a similarly situated non-Polish employee, summary judgment is appropriate because Goluszek failed to offer any evidence on an essential element of his *prima facie* case.

### Conclusion

The court grants H.P. Smith's motion for summary judgment on the sexual-harassment and national-origin claims, but denies it as to the retaliation claim.