Norman E. POLLY, Plaintiff,

v.

HOUSTON LIGHTING & POWER COM-
PANY, David Wallace, David Uberno-
sky, Hans–Peter Buchman, Michael
Powell, and Jackie Fowler, Defendants.

HOUSTON LIGHTING & POWER COM-
PANY, a Subsidiary of Houston In-
dustries, Inc., Plaintiff,

v.

The INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL
UNION NO. 66 and Norman E. Polly,
Defendants.

Civ. A. Nos. H–91–574, H–91–739.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 14, 1992.

Tom F. Coleman, Jr., Coleman Bartlett & Associates, Houston, Tex., Floyd J. Fernandez, Humble, Tex., for plaintiff.

Norman E. Polly, pro se.

L. Chapman Smith, Robert E. Johnson, Baker & Botts, Houston, Tex., for defendants.

Robert Wilson Rickard, Swearingen Clark & Moore, Port Arthur, Tex., for consolidated defendant.

## MEMORANDUM AND RECOMMENDATIONS

BOTLEY, United States Magistrate Judge.

Pending before the Court are Defendant International Brotherhood of Electric Workers, Local Union No. 66's Motion for Summary Judgment (# 33) and Defendants Houston Lighting and Power, David Wallace, David Ubernosky, Hans–Peter Buchman, Michael Powell, and Jackie Fowler's (referred to collectively as "HL & P") Motion for Summary Judgment (# 35).

## CONSOLIDATION

This case, as it is now before the Court, is the consolidation of two cases, each case having distinct and severable issues; however the two cases have been consolidated in that parties which are common to each case dictate that all of the issues presented be addressed simultaneously.

This matter was initiated by Plaintiff Norman E. Polly ("Polly") in Civil Action H–91–574, where he alleged that during his employment with Houston Lighting and Power Company ("HL & P"), he was the victim of sexual harassment, retaliation, and wrongful termination. Polly also asserted pendent state claims of assault, battery, intentional infliction of emotional distress, and negligent hiring and supervising. The companion case, Civil Action H–91–739, was initiated by HL & P, against the International Brotherhood of Electrical Workers, Local Union Number 66 ("the Union") seeking to set aside the decision of an arbitrator which mandated that Polly be reinstated to his former position with HL & P. For purposes of clarity, the sexual harassment, retaliation, wrongful termination, and the related pendent state claims, as alleged by Polly and the claim that the decision of the arbitrator should be set aside, as alleged by the Union and HL & P, are discussed separately.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment shall be rendered forth with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A party seeking summary judgment bears the initial burden of informing the Court of the basis of the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the bur-

**4**

den of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. *International Association of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Manufacturing Company*, 812 F.2d 219, 222 (5th Cir.1987).

■ The burden of proof shifts to the non-movant to show that a summary judgment should not be granted, once the movant has shown that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–325, 106 S.Ct. at 2552–2553. A party opposing a summary judgment may not rest upon mere allegations or denial of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The evidence submitted by the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 254–255, 106 S.Ct. at 2513. The inferences to be drawn must be viewed in a light most favorable to the party opposing the motion. *Matsuisha Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–590, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986).

## I.

### SEXUAL HARASSMENT CLAIMS

#### A. Facts

In his amended complaint, Polly, a male, alleges that during the course of his employment with HL & P as a journeyman mechanic, he was sexually harassed by other male HL & P employees, with whom Polly worked as part of a traveling maintenance crew, from May, 1986 to August, 1988 in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–5 and Tex.Ann.Civ.Stat. art. 5221k, Section 5.01(1) (Vernon Supp.1989). The conduct which supports Polly's claims of sexual harassment is the same conduct upon which Polly relies in alleging his state claims of assault, battery, intentional infliction of emotional distress and negligent hiring and supervising.

Specifically, Polly complains of conduct, which if proven as true, is heinous, egregious and unquestionably beyond mere "horseplay" as HL & P would have this Court believe. Polly complains that the other male members of his work crew, David Wallace ("Wallace"), David Ubernosky ("Ubernosky"), Hans–Peter Buchman ("Buchman"), Michael Powell ("Powell"), and Jackie Fowler ("Fowler") subjected him to verbal as well as physical abuse. For example, Polly states that he was repeatedly called a "faggot", a "queer" and a "fat bucket of Channelview sh-t". Furthermore, Polly states that he has been kissed by one or more of the defendants, that the other defendants exposed their genitalia to him, that his genitals were grabbed and squeezed, that the defendants would pinch his buttocks and chest, and that on one occasion, Defendant Ubernosky forced a broom handle against Polly's rectum.

#### B. Conduct Actionable as Sexual Harassment Under Title VII

Polly alleges in his amended complaint that "[t]he acts complained of herein were clear instances of sexual harassment ...", however, Polly failed to submit to the Court any legal authority which supports his contention that conduct that is of a sexual nature committed against a male and by other males is actionable under Title VII. To the contrary, the Congress in enacting Title VII, intended to establish equal employment opportunities for women and therefore Congress did not envision nor proscribe the conduct of which Polly now complains.

Title VII, in relevant part, reads:

"it is an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e–2(a)(1).

A claim of sexual harassment can be actionable as *quid pro quo* harassment or hostile-environment harassment. *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618–19 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

*Quid pro quo* sexual harassment under Title VII exists when (1) the employee belongs to a protected group, (2) the employee was subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex and, (4) the employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. *Henson v. City of Dundee*, 682 F.2d 897, 29 FEP Cases 787 (11th Cir.1982). Additionally, to establish liability for *quid pro quo* sexual harassment, the employee's acceptance or rejection of the harassment must be an expressed or implied condition of the receipt of a job benefit, or must cause a tangible job detriment. *Id.* at 909; *see also*, Equal Employment Opportunities Guidelines, 29 C.F.R. § 1604.11(a)(1) & (2) (1992).

The second type of sexual harassment actionable pursuant to Title VII, hostile-environment sexual harassment, exists when there are "unwelcome sexual advances, requests for sexual favors, or physical conduct of a sexual nature ... [that have] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." Equal Employment Opportunities Guidelines, 29 C.F.R. § 1604.11(a)(3) (1992). More specifically, there are five elements which a plaintiff must satisfy to maintain an action for hostile environment-sexual harassment. The plaintiff must prove: (1) that he belongs to a protected group, (2) that he was subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex, (4) the harassment complained of affected a "term, condition, or privilege" of employment, and (5) the employer knew or should of known of the harassment and failed to take remedial action. *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992); *Henson*, 682 F.2d at 909.

Although Polly failed to state in his amended complaint which of the two types of sexual harassment he believes he was the victim of, the Court finds that the facts as alleged by Polly most closely support a hostile environment claim and not a *quid pro quo* claim. The Court makes this conclusion because as alleged by Polly, the sexual behavior was perpetrated not by his supervisors who had the authority to affect tangible aspects of the Polly's compensation, terms, conditions, or privileges of employment, but by his co-workers. Furthermore, the acts that were committed against Polly were not in demanding sexual favors, rather the acts that were committed were done with jealous or malicious animus.

In its motion for summary judgment, HL & P focuses its argument on the five elements required to establish a hostile environment claim. Specifically, HL & P argues that Polly failed to demonstrate that the harassment committed against Polly was based upon his sex, and therefore Polly can not maintain an action for sexual harassment under Title VII. The Court agrees with HL & P's conclusion that Polly can not maintain a cause of action for sexual harassment under Title VII; however, the Court relies instead on a more convincing argument, that in enacting Title VII, Congress did not intend to proscribe the harassment complained of by Polly. *Goluszek v. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988).

In *Goluszek*, a case with facts analogous to the case now before the Court, Anthony Goluszek, a male mechanic, sued his former employer, H.P. Smith for sexual harassment committed by his fellow male

employees under Title VII. *Goluszek*, 697 F.Supp. at 1452. Goluszek had been subjected to nearly the same type of sexual conduct as Polly in that Goluszek was also poked in the buttocks with a stick and repeatedly questioned him about his heterosexuality. *Id.* at 1454. Despite this abhorrent behavior, the Court in *Goluszek* reasoned that Title VII is designed to prohibit sexual harassment where the victim is degraded because of the victim's sex and where the victim (usually female) is deprived of the right to participate in the work on equal footing with others similarly situated. *Goluszek*, 697 F.Supp. at 1456; *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir.1986). The Court stated that with the exception to the reference of a female employee in a letter, each of the actors in *Goluszek* was a male; and (just as in the instant case) "the argument that Goluszek worked in an environment that treated males as inferior consequently is not supported by the record." *Goluszek*, 697 F.Supp. at 1456. The Court concluded that although Goluszek may have been harassed because he was a male, the harassment did not create an anti-male environment in the work. *Id.* In conclusion, Goluszek's Title VII claim for sexual harassment was denied by the Court as the Court held that "a wooden application of the verbal formulations created by the courts would salvage Goluszek's sexual harassment claim. The [C]ourt, however, chooses instead to adopt a reading of Title VII consistent with the underlying concerns of Congress and grants H.P. Smith summary judgment on that claim." *Id.* For the same reasons cited by the *Goluszek* Court, this Court will also follow the intent of Congress and will not, as suggested by Polly, go beyond the ordinary and historical interpretation of Title VII to fashion a remedy in this instance. Therefore, Polly's claim of sexual harassment pursuant to Title VII and art. 5221k, Tex.Ann.Civ.Stat. which was created and formulated pursuant to § 1.02(1) "to provide for the execution of the policies embodied in Title VII of the Federal Civil Rights Act of 1964," are not actionable.

## II.

## RETALIATORY CONDUCT AND WRONGFUL TERMINATION

### A. *Facts*

On March 20, 1990, Polly was terminated from his employment with HL & P, allegedly for failing to report to the Limestone Power Plant, on the same day, as directed. Polly alleges that although HL & P cited his failure to follow directions as the reason for his discharge, HL & P actually terminated Polly in retaliation for his three charges of sexual harassment and discrimination filed with the Equal Employment Opportunity Commission, and for his complaints to his supervisors concerning the conduct he then believed to be sexual harassment.

### B. *Retaliation and Wrongful Termination Standard*

"To establish a *prima facie* case of retaliatory discharge under 42 U.S.C. § 2000e–3, the plaintiff must show: (1) he opposed an employment practice that was unlawful within the meaning of Title VII or he participated in a proceeding under Title VII; (2) he suffered an adverse action by his employer; (3) because of his opposition or participation." *Goluszek*, 697 F.Supp. at 1457, citing *Klein v. Trustees of Indiana University*, 766 F.2d 275, 280 (7th Cir.1985); *see also, Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992). Furthermore, § 2000e–3 also encompasses those circumstances where the plaintiff had a reasonable belief that there had been a Title VII violation. *Goluszek*, 697 F.Supp. at 1457, citing *Jennings v. Tinley Park Community Consol. School Dist. No. 146*, 796 F.2d 962, 967 (7th Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987). In filing this action, it is clear that Polly had a belief, although mistaken, that there had been a Title VII violation. The determination of the reasonableness of that belief and the nexus, if any, between Polly's charges of sexual harassment and his termination are genu-

ine issues of material fact which are properly to be decided by the ultimate factfinder. *See Goluszek*, 697 F.Supp. at 1457.

## III.

### PENDENT STATE CLAIMS

 In its motion for summary judgment, HL & P argues that Polly's pendent state claims of assault, battery and intentional infliction of emotional distress against Wallace, Ubernosky, Powell, and Buchman are stale claims barred by the applicable statute of limitations. Tex.Civ. Prac. & Rem.Code. § 16.003 (Vernon 1986).

In response, Polly argues that § 16.003 has been tolled because no single action by the defendants was sufficient to sound in tort, rather, Polly contends, it was the aggregate of their conduct which now arises to tortious conduct entitling Polly to relief. The Court disagrees. The actions alleged in Polly's complaint were committed by Wallace, Ubernosky, Powell, and Buchman from April 1986, to August, 1988, yet Polly chose to wait until January 31, 1991, five months beyond the two-year statute of limitations, to file this action. Accordingly, Polly's charges of assault, battery, and intentional infliction of emotional distress against Wallace, Ubernosky, Powell, and Buchman are time-barred. However, Polly's claims of assault, battery, and intentional infliction of emotional distress against Fowler arise from an incident which occurred in December 1989, within the two-year period preceding the filing of this action, and therefore are not time-barred.

## IV.

### VICARIOUS LIABILITY

 Polly seeks to impose liability upon HL & P for the tortious conduct of the above-named individual defendants. However, the general rule in Texas is that in a master-servant relationship, an employer is not liable for the actions which an employee takes in his own interests and not to further the purpose of carrying out the master's purpose. *Viking v. Circle K Convenience Stores, Inc.*, 742 S.W.2d 732,

734 (Tex.App.—Houston [1st Dist.] 1987, writ denied); *Smith v. M System Food Stores*, 156 Tex. 484, 297 S.W.2d 112 (1957). The facts as alleged by Polly do not demonstrate in any manner that the conduct of the individual defendants was done to carry out a purpose of HL & P. Furthermore, two exceptions have been recognized to the general rule: (1) the "rule of force" exception, which holds the employer liable for authorizing, implicitly or explicitly, the use of force and placing the employee in a position where the use of force is necessary, *Green v. Jackson*, 674 S.W.2d 395 (Tex.App.—Amarillo 1984, writ ref'd n.r.e); *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 239 (1952); and (2) whether the misconduct arose out of and was done in the prosecution of the business which the servant was employed to do, and the employee must have been acting within the scope of his employment. *Green v. Jackson*, 674 S.W.2d 395 (Tex.App.—Amarillo 1984, writ ref'd n.r.e); *Smith v. M System Food Stores*, 156 Tex. 484, 297 S.W.2d 112 (1957). Because Polly has not provided evidence that he was placed in a position where the use of force was necessary, nor has he provided evidence that the individual defendants were acting within the scope of their employment when they acted against him, Polly's allegations in support of his claim of vicarious liability do not fall within either of the exceptions. In fact, Polly has failed to demonstrate that there are any material facts indicating that these alleged acts were done for purposes other than personal animosity. Therefore, HL & P's motion for summary judgment on Polly's claim of vicarious liability for the torts of the individual defendants and the misconduct which formed his complaint for sexual harassment should be granted.

## V.

### NEGLIGENT HIRING AND NEGLIGENT SUPERVISING

 Polly also charges HL & P with negligent hiring and supervising as a result of the various torts by the individual defen-

dants as well as the acts which he believed constituted sexual harassment.

The imposition of liability on an employer for negligent hiring, requires the plaintiff to present evidence that his injuries "were brought about by reason of the employment of the incompetent servant and be, in some manner, job-related. Stated another way, the negligence in hiring the employee must be the proximate cause of the injuries to the plaintiff." *Dieter v. Baker Service Tools, A Division of Baker International, Inc.*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied). Again, Polly has failed to allege any facts tending to show the negligence, if any, of HL & P in hiring the individual defendants; and further, Polly has failed to show that such negligence was the proximate cause of the conduct of the individual defendants. In *Dieter, supra,* the plaintiff was assaulted by two employees of an oil field tool supply business in retaliation for plaintiff's assault of the of one of the employees. *Id.* at 409. The plaintiff, Dieter, then filed suit against the employer to recover for his injuries claiming respondeat superior and negligent hiring and supervision. *Id.* The trial court granted summary judgment for the employer on all issues and Dieter appealed. *Id.* On appeal, the Texas Court of Appeals, Corpus Christi, affirmed the granting of summary judgment on the respondeat superior claim and reversed and remanded on the negligent hiring and supervision claim, holding that the employer failed to assert that it was unforeseeable that any negligence in hiring or supervising the employees would result in an assault upon the plaintiff. *Id.* On remand, the employer revised its summary judgment motion to include the omission cited by the appellate court and the trial court again granted summary judgment on the negligent hiring and supervision claims. *Dieter v. Baker Service Tools, A Division of Baker International, Inc.*, 776 S.W.2d 781 (Tex.App.—Corpus Christi 1989, reh'g. denied). In contrast to Dieter's earlier appeal however, the appellate court then affirmed the trial court's granting of summary judgment in favor of the employer on the negligent hiring and supervision claims. *Id.* In sup-

port of it holding, the appellate court reasoned that even though Dieter had presented four affidavits; one from himself; two from former employees stating that it was their belief that the employer should have foreseen the that the two assailants would commit violent acts; and a fourth from an expert in the field of personnel management and hiring stating that the defendants were violent in nature, that a reasonable and prudent employer would have been able to foresee the violent nature the employees, and would have taken steps to correct such behavior, and that the assault on the plaintiff would not have occurred but for the negligent hiring, supervising and retention of the defendants, there were no genuine issues or material fact to preclude a summary judgment. *Id.* In this case, not only is this Court not faced with affidavits in support, Polly has not presented any competent evidence to substantiate a showing of proximate cause between the misconduct of the individual defendants and the hiring and supervising of those defendants. HL & P's motion for summary judgment on Polly's claims for negligent hiring and supervising should therefore be granted.

## V.

## ARBITRATION AWARD

█ In support of its motion for summary judgment, the Union contends that there are no genuine issues of material fact concerning the arbitration award. The Union first argues that arbitration is universally recognized as the favored means of resolving labor disputes. Next, the Union asserts that the appropriate standard for enforceability of an award is whether it "draws its essence from the collective bargaining agreement." *New Orleans Steamship Association v. International Longshoremen's Association, Local 1418*, 626 F.2d 455, 105 LRRM 2539 (5th Cir.1980). The Agreement is a written agreement between the Union and HL & P which outlines HL & P employee policies, and sets forth guidelines for relations between the Union and HL & P, including employee grievances and procedures for appealing

terminations. The Union contends that the arbitrator's award did "draw its essence" from the Agreement, and therefore it should be enforced. In response to the Union's argument, HL & P concedes that the Union's standard for determining whether an arbitration award is enforceable is the correct one. However, HL & P contends that several exceptions apply to "draw its essence from the collective bargaining agreement" standard.

HL & P argues that the first exception to the general rule of enforcing awards made by arbitrators occurs when the arbitrator exceeds the authority provided by the agreement. *Amanda Bent Bolt Co. v. International Union, UAW*, 451 F.2d 1277 (6th Cir.1971). HL & P charges that the arbitrator, Barry Baroni, ("Baroni") exceeded his authority by directing Polly to be reinstated to his former position. HL & P contends that Article III of the Management Rights Clause of the Agreement gives HL & P the exclusive right to determine its disciplinary policy for employees who fail to comply with orders given by HL & P, and that by directing Polly to be reinstated to his former job, Baroni exceeded the authority provided for by the agreement. In support of this contention, HL & P refers the Court to Article XVI, Section 4, of the Agreement which mandates that arbitrators shall not have the authority to change, modify, or amend the Agreement.

HL & P also argues that because Baroni's arbitration award was based on an erroneous fact, it has no effect and therefore is not binding. HL & P contends that Baroni's award would have been different if Baroni had not based his decision on the false assumption that Polly made an attempt to find a baby sitter for his adolescent son, his reason for not reporting to the Limestone Power Plant as directed. In support, HL & P argues that it has doubts concerning Polly's attempt to find a baby sitter for his son, as a result of deposition testimony obtained from Polly, his ex-wife, and his son. Polly, during his deposition, testified that he tried to contact his ex-wife and son. However, the testimony of Polly's ex-wife and son provide no evidence that Polly made such an effort. Polly's son testified that he had received no messages from his father, and Polly's ex-wife testified that she too had received no communications from Polly concerning his attempt to locate a baby sitter. Hence, HL & P concludes that Baroni's award was based upon an erroneous assumption that Polly made an attempt to find a baby sitter, and that the aforementioned evidence would have led to a different result by Baroni. The Court is of the opinion that the circumstances involving Baroni's decision and the considerations he made create genuine issues of material fact which preclude the granting of a summary judgment.

## RECOMMENDATIONS

This case is one of first impression in this circuit. Polly's sexual harassment and sexual discrimination claim fail because there is no legal precedent to support his contentions. In fact, the Court conducted a hearing on July 15, 1992, wherein counsel for Polly admitted that he knew of no case law to support his arguments. Polly has yet to provide the Court with any authority for his arguments, instead Polly asks the Court to make a reasonable extension of Title VII to include his sexual harassment and sexual discrimination claims. However, it is the Court's opinion that to reach such an extension would go beyond the powers of this Court, and do damage to the legitimacy of its powers. In addition, it is clear from case law and Congressional intent that Title VII claims have been limited to discrimination based upon sex, meaning between members of the opposite sex. Congress has not to date provided protection under Title VII for acts of sexual harassment between persons of the same sex. Thus, the Court should not attempt to amend the statute and substitute its interpretation where Congress has not acted to provide for such protection. For the aforementioned reasons, it is therefore

RECOMMENDED that HL & P's Motion for Summary Judgment Motion (# 35) should be granted in part, and denied in part. Summary judgment should be granted with respect to Polly's Title VII and art. 5221k claims against HL & P, since he fails

to satisfy a *prima facie* case. The Court also recommends granting summary judgment in favor of HL & P on Polly's claims of vicarious liability, negligent hiring and supervising, assault, battery and intentional infliction of emotional distress by David Wallace, David Ubernosky, Michael Powell, and Hans Peter–Buchman. The Court recommends that HL & P's motion for summary judgment against Jackie Fowler be denied. Further, the Court recommends that summary judgment be denied on Polly's retaliation and wrongful termination claims. It is further

RECOMMENDED that Defendant International Brotherhood of Electric Workers, Local Union No. 66's Motion for Summary Judgment (# 33) be denied.

The Clerk shall file this instrument and transmit a copy to each party or counsel. Failure to file written objections to the proposed findings and recommendation contained in this report within ten (10) days after the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.