**Thomas F. RANEY, Jr., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 94–0068 (GK/PJA).**

United States District Court, District of Columbia.

July 5, 1995.

284

James Grafton Gore, Jr., for plaintiff.

Thomas Koger, for defendants.

### MEMORANDUM ORDER

ATTRIDGE, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to proceed before a magistrate judge. Presently under consideration are the defendants' motions to file an amended answer [40] and for summary judgment [45]. For the reasons set forth below, the Court denies the motion to file an amended answer and grants in part and denies in part the motion for summary judgment.

### I. Background

Three business days before trial, and 15 months after being served with the complaint, the defendants moved to file an amended answer in order to interpose "newly raised" statute of limitations defenses. That same day the defendants also moved for summary judgment. In response, the plaintiff moved to continue the trial in order to respond in writing to the summary judgment motion. The defendants consented to the motion to continue.

### II. Motion to Amend the Answer

Before turning to the defendants' motion for summary judgment, the Court must decide whether to grant the defendants' motion to amend the answer to allow the defen-

dants to assert the affirmative defense that the plaintiff's claims are time-barred. A review of the court jacket discloses that the defendants had already raised this defense in their original answer filed March 23, 1994. Answer at 3 (Third Defense). On November 17, 1994, the plaintiff filed an "Amendment to Complaint" and stated that it was "to be added to his original Complaint." Am. Compl. at 1. On December 2, 1994, the defendants filed an Answer to the Amended Complaint. The Answer to the Amended Complaint did not contain the affirmative defense of statute of limitations originally asserted. Moreover, the defendants failed to assert the statute of limitations defense in their Corrected and Amended Pretrial Statement. The parties' pretrial statements were adopted by the Court on May 11, 1995 as the Pretrial Order of the Court.

Federal Rule of Civil Procedure 16(e) provides that the pretrial order of the court is to control the subsequent course of action of the case unless modified by later order and a modification shall take place only to prevent manifest injustice. Thus, until the filing of the defendants' recent motion to amend its answer to assert the statute of limitations, it appeared to all that the defendants had abandoned this affirmative defense.

■ Having abandoned the defense, the issue now before the Court is whether the Pretrial Order should now be modified to permit the defendants to re-assert the defense. Rule 16(e) provides that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice." Although trial courts have broad discretion in determining whether to modify the pretrial order, *Washington Hosp. Ctr. v. Cheeks,* 394 F.2d 964, 965–66 (D.C.Cir.1968), the words "to prevent manifest injustice" indicate an intent to restrain the court from so doing. Advisory Committee Notes.

The Court finds that it would substantially prejudice Raney to allow the statute of limitations defense to be revived at this late stage in the proceedings. The defendants received formal notice of Raney's civil claim January 31, 1994 and filed a motion to partially dismiss on March 14, 1994. Nowhere in that dispositive motion, or in an other document filed with the Court up until May 19, 1995, the date this present motion was filed, did the defendants ever argue the statute of limitations defense. Such a last-minute assertion of the defense indicates that its earlier mention as an affirmative defense was mere boilerplate language in a *pro forma* answer in the original answer.

■ Subsequent to the filing of the defendants' first dispositive motion in March 1994, Raney has incurred substantial legal costs in conducting discovery, attending hearings and conferences, and preparing for trial. Such expenditures of time and money constitute the type of prejudice the Federal Rules seek to prevent. *See, e.g., McGraw v. Matthaei,* 388 F.Supp. 84, 88 (E.D.Mich.1972) (denying motion to amend pleadings to interpose statute of limitations defense because, *inter alia,* non-movant had incurred substantial expenses in course of proceedings.); *see also Perlmutter v. Shatzer,* 102 F.R.D. 245, 248 (D.Mass.1984) (motion to amend answer made five years after original answer was unduly prejudicial because of time delay.). Thus, the Court concludes that the defendants have waived the affirmative statute of limitations defense and the Court will not in this stage modify the Pretrial Order to allow its assertion. A contrary ruling would work manifest injustice because of the time, money and other resources already expended.[1]

### III. Motion for Summary Judgment

In their motion for summary judgment, the defendants advance a number of arguments. In addition to the statute of limitations defense, the defendants contend that: 1) the plaintiff fails to state a sexual harassment cause of action under Title VII of the Civil Rights Act of 1964 because harassment by supervisors of the same sex is not prohibited by that law; and 2) the plaintiff is not entitled to damages on his Title VII claims because all such alleged conduct is acknowl-

---

1. The Court observes that statutory time limit for filing a Title VII action is not jurisdictional, and is subject to equitable doctrine of tolling. *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

edged to have occurred before 1989. Mem. P. & A. at 4. Furthermore, the defendants assert that: 1) Raney has abandoned his claims under 42 U.S.C. §§ 1981 and 1983; 2) as a District of Columbia government employee, the plaintiff cannot assert a claim under the District of Columbia Human Rights Act ("HRA"); and 3) the official capacity claims against the Director Merrich T. Malone should be dismissed because he is a redundant defendant. *Id.* at 4–5.

## A. Same-sex Harassment

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Sex discrimination under Title VII includes sexual harassment, which takes two basic forms: 1) *quid pro quo* harassment whereby a supervisor demands sexual consideration in return for job benefits; and 2) hostile-environment harassment. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618–19 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

■ Raney claims *inter alia* that he was the victim of both types of sexual harassment. Pl.'s Pretrial Stmt. at 2 ("[H]e has been homosexually, sexually harassed and subjected to a hostile sexual environment ... [and] has been denied promotion on a *quid pro quo* basis because he failed to provide sexual favor [sic] to his supervisors."). The defendants argue that courts outside this circuit have consistently held that Title VII does not comprehend a claim of homosexual harassment. The issue then is whether harassment by homosexual or bisexual supervisors constitutes discrimination *because of* one's sex.

Although the defendants cite a number of cases from other jurisdictions allegedly supporting their position, nonetheless, the law is different in this circuit. In *Barnes v. Costle*, 561 F.2d 983, 992 n. 55 (D.C.Cir.1977), our Court of Appeals indicated that Title VII would encompass *quid pro quo* harassment imposed on a male subordinate by a heterosexual female superior, or upon a subordinate of either gender by a homosexual superior of the same gender. In each instance, the legal problem would be identical to that confronting us now—the exaction of a condition which, but for his or her sex, the employee would not have faced.

In *Bundy v. Jackson*, 641 F.2d 934, 942 (D.C.Cir.1981), the Circuit explicitly relied on *Barnes* as authority for its holding that "discrimination is *sex* discrimination whenever sex is for no legitimate reason a substantial factor in the discrimination." In its decision, the Court reaffirmed that sex discrimination could take the form of a homosexual supervisor harassing an employee of the same gender. *Id.* at 942 n. 7.

Although the statements in *Barnes* and *Bundy* may be considered dicta, this Court believes that the dicta represent the better-reasoned side of the debate. Although a number of district court opinions rule that same-sex discrimination is not within the ambit of Title VII, apparently the 5th Circuit is the only appellate court to have decided the matter in a published opinion. In *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451–52 (5th Cir.1994), the 5th Circuit, wholly relying on an earlier unpublished opinion and with virtually no reasoning, summarily ruled that harassment by a male supervisor against a male subordinate does not constitute discrimination under Title VII.

Many of the district courts which have decided this issue, as well as the 5th Circuit in *Garcia*, relied heavily on the influential district court opinion in *Goluszek v. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988). See, e.g., *Benekritis v. Johnson*, 882 F.Supp. 521 (D.S.C.1995) (relied on *Goluszek* for the proposition that same-sex harassment was not the type of conduct Congress sought to prohibit when it enacted Title VII); *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822, 834 (D.Md.1994) (relied on *Goluszek* for same the proposition); *Vandeventer v. Wabash Nat'l Corp.*, 867 F.Supp. 790 (N.D.Ind. 1994) (cited *Goluszek*). In *Goluszek* the district court asserted that Congress never intended to prohibit same-sex harassment but instead was concerned with rectifying discrimination against a discrete and vulnerable

group. *Id.* at 1456. Unfortunately, the district court in *Goluszek* did not support its view of Congress' intent with any citations to the legislative record. Instead the court cited to Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv.L.Rev. 1449, 1451–52 (1984), which, according to this Court's reading, does not grapple with legislative history interpretations at all. In actuality, there is little legislative history with which to guide the courts in their analyses of Title VII sex discrimination cases—a fact which the courts have consistently bemoaned. *See, e.g., Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 63–64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

Despite the lack of legislative history, in *Meritor Savings*—where the Supreme Court first recognized that Title VII may be violated by proving that discrimination based on sex created a hostile environment—the Court clearly indicated that men could be victims of harassment under Title VII. Speaking in gender-neutral language, the opinion stated that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminates' on the basis of sex." *Id.* at 64, 106 S.Ct. at 2404. Furthermore, the Supreme Court interpreted the phrase "terms, conditions, or privileges of employment" to indicate a congressional intent "to strike at the entire spectrum of disparate treatment of men and women." *Id.* (citation and internal quotation marks omitted). Thus, it cannot be denied that even if the Civil Rights Act of 1964 is silent as to its intended scope, the law's breadth has since increased by judicial interpretation.

Further evidence of the Title VII's expanse can be found in the position of the agency charged with enforcing federal antidiscrimination laws. The Equal Employment Opportunity Commission ("EEOC") unequivocally states that Title VII protects employees from same-sex discrimination. Its position is that:

> (3) The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (not on the victim's sexual preference) and the harasser does not treat employees of the opposite sex the same way. (See Commission Decision No. 81–16, CCH Employment Practices Guide P6756, and @ 615.5(1) below.)
>
> Example 1—If a male supervisor of male and female employees makes unwelcome sexual advances toward a male employee because the employee is male but does not make similar advances toward female employees, then the male supervisor's conduct may constitute sexual harassment since the disparate treatment is based on the male employee's sex.

EEOC Compliance Manual § 615.2 (1981).

As evidence of the validity of the EEOC's position, several district courts have upheld a similar view of Title VII's prohibitions against same-sex harassment. See, e.g., *EEOC v. Walden Book Co.,* 885 F.Supp. 1100, 1103 (M.D.Tenn.1995) ("sexual harassment by a homosexual supervisor of the same sex is exaction of a condition of employment which, but for his or her sex, and employee would not have faced."); *Pritchett v. Sizeler Real Estate Mgmt. Co.,* 1995 WL 241855, *2, 1995 U.S. Dist. LEXIS 5565, *6 (E.D.La. 1995) (contrary ruling "would exempt homosexuals from the very laws that govern the workplace conduct of heterosexuals."); *McCoy v. Johnson Controls World Serv., Inc.,* 878 F.Supp. 229, 232 (S.D.Ga.1995); *Prescott v. Independent Life and Accident Ins. Co.,* 878 F.Supp. 1545, 1550–52 (M.D.Ala. 1995); *Polly v. Houston Lighting & Power Co.,* 825 F.Supp. 135 (S.D.Tex.1993); *Joyner v. AAA Cooper Trans.,* 597 F.Supp. 537, 542 (M.D.Ala.1983), *aff'd without opinion,* 749 F.2d 732 (11th Cir.1984); *Wright v. Methodist Youth Services, Inc.,* 511 F.Supp. 307, 310 (N.D.Ill.1981).

The defendants also argue that even if homosexual harassment is prohibited by Title VII, if any discrimination was committed, it was perpetrated by bisexual supervisors—an offense not actionable under Title VII. The defendants rely on the portion of footnote 55 of the *Barnes* opinion which states: "In the

case of the bisexual superior [who conditions the employment opportunities of a subordinate of either gender upon participation in a sexual affair], the insistence upon sexual favors would not constitute gender discrimination because it would apply to male and female employees alike." *Barnes,* 561 F.2d at 990 n. 55.

■ The defendants omit that this dictum was clarified somewhat by *Bundy.* There the Court stated, "Only by a *reduction ad absurdum* could we imagine a case of harassment that is not sex discrimination—where a bisexual supervisor harasses men and women alike." *Bundy,* 641 F.2d at 942 n. 7 (citation omitted). Thus, it is fair to read *Bundy* to stand for the proposition that only in the rare case when the supervisor harasses both sexes equally can there be no sex discrimination. If, however, the supervisor singles out one sex, then the protections of Title VII are invoked. See also EEOC Compliance Manual, *supra,* at Ex. 1. Since Raney claims that his supervisors discriminated against males alone, (Pl.'s Opp. to Mot. S.J. at 3), his claim shall survive summary judgment. Summary judgment is appropriate only when, after viewing all inferences in the light most favorable to the nonmoving party, no genuine issues of material fact remain. *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994) (citations omitted); see also Fed.R.Civ.P. 56(c).

Because the EEOC's position, as well as the opinions cited earlier, support the view as expressed in *Barnes* and *Bundy*—i.e., sex discrimination occurs when an employee is faced with discriminatory treatment "which, *but for* his or her sex, the employee would not have faced"—and since the defendants have presented this Court with nothing more than questionable precedent from other jurisdictions, the Court shall deny summary judgment for the defendants.

## B. Compensatory Damages

The defendants argue that the plaintiff is not entitled to compensatory damages because he points to no violation of Title VII which took place after the enactment of the Civil Rights Act of 1991. The plaintiff contends, however, that the discrimination is still ongoing. Pl.'s Opp. The issue of damages is not dispositive of the claim and its resolution shall depend on the nature of the evidence received at trial. Therefore, the defendants' motion for summary judgment on this ground is denied.

## C. Abandoned Claims

The defendants correctly observe that the plaintiff reduced the scope of his claims in his pretrial statement, which was adopted as the Pretrial Order. The plaintiff now claims only violations of "the Civil Rights Act of the 1964 Title VII, the Civil Rights Act of 1991 of the United States and the Human Rights Act of the District of Columbia." Pl.'s Pretrial Stmt. at 2. Therefore, in view of the plaintiff's abandonment of the section 1981 and section 1983 claims, they shall be dismissed.

The Court also notes as a housekeeping matter that the plaintiff has abandoned a number of other claims originally alleged in his "Amendment to Complaint." These other claims, deemed abandoned and thereby dismissed, include all claims of religious discrimination, nepotism, and violations of District of Columbia regulations.

## D. District of Columbia Human Rights Act

Next, the defendants cite *Williams v. District of Columbia,* 467 A.2d 140 (D.C.App. 1983), for the proposition that there is no private right of action for District of Columbia Government employees under the District of Columbia Human Rights Act ("HRA"). However, the court in *Williams* expressly left open the issue of whether a D.C. Government employee could obtain judicial review of an agency's determination of his administrative complaint if the employee had exhausted his or her administrative remedies. *Id.* at 142, n. 4. In the absence of a Local Rule 108 statement of facts, the Court cannot resolve this issue pretrial. Therefore the defendants' motion for summary judgment on this claim shall be denied.

## E. Motion to Dismiss

■ Finally, inserted in the motion for summary judgment, the defendants move to dismiss the complaint against Director of

Housing Malone on the grounds that it is redundant to sue both the District and one of its officers in his official capacity. Indeed Raney is suing the D.C. Government and "[t]he Directors of the District of Columbia Department of Housing and Community Development, in their respective official capacities."[2] Compl. at 1. In a Title VII suit against the District of Columbia, only the District itself, and not its departments or agencies, may be the proper defendant. *Zervas v. District of Columbia,* 817 F.Supp. 148 (D.D.C.1993) (citing 42 U.S.C. § 2000e(b)). Accordingly, the Court shall dismiss the Title VII claims against Director Malone.

### IV. Conclusion

Accordingly, upon consideration of the defendants' Motion to File an Amended Answer to the Amended Complaint [40]; and the defendants' Motion for Summary Judgment [45], the opposition, the reply, and the entire record, it is for the foregoing reasons this 5th day of July 1995

**ORDERED** that the Motion to File an Amended Answer to the Amended Complaint [40] is hereby **DENIED;** and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment on the Title VII and District of Columbia Human Rights Act claims is **DENIED;** and it is

**FURTHER ORDERED** that the plaintiff's Title VII claims against Defendant Merrich T. Malone, and claims pertaining to religious discrimination, nepotism, violations of District of Columbia regulations and violations of 42 U.S.C. §§ 1981 and 1983, shall be **DISMISSED;** and it is

**FURTHER ORDERED** that a scheduling conference to select a trial date is set for July 13, 1995 at 9:15 A.M. in Courtroom 25.

---

2. It appears that there is only one Director of the Department of Housing and Community Development.