**Phil QUICK, Plaintiff,**

v.

**DONALDSON COMPANY, INC., Roger Daniels, and Brett Musgrove, Defendants.**

No. 4–94–CV–20093.

United States District Court, S.D. Iowa, Central Division.

Aug. 4, 1995.

Victoria L. Herring, for plaintiff.

Steven T. Brennecke and Randy G. Millard, for defendant Donaldson Co., Inc.

Tom Zurek, Mark Aljets and Greg Naylor, for defendants Roger Daniels and Brett Musgrove.

MEMORANDUM OPINION, AND RULING GRANTING MOTION FOR SUMMARY JUDGMENT WITH REMAND OF STATE CLAIMS

BREMER, United States Chief Magistrate Judge.

This matter comes before the court on Defendants' motions for summary judgment, (Pleadings 65 & 72), which are resisted by Plaintiff. Plaintiff Phil Quick alleges that the actions of Donaldson Company, Inc. (DCI) and two DCI supervisors, Brett Musgrove and Roger Daniels, constituted sex discrimination in violation of 42 U.S.C. section 2000e–2(a)(1), Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991. Quick also asserts a number of state claims against DCI, and Musgrove and Daniels.

Because Quick has raised ten separate claims involving four different defendants, it may be helpful to set out the particular claims made against each defendant. In his amended complaint, Quick lists ten counts:

   I.  Failure to provide a safe work environment, naming only DCI;

  II.  Negligent supervision, naming DCI, Daniels and Musgrove;

 III.  Violation of Iowa Code section 730.5 (1991) by conducting an unauthorized blood test, naming only DCI;

 IV.  Assault and battery, naming DCI, Daniels and Musgrove;

  V.  Defamation of character and slander, naming DCI, Daniels and Musgrove;

 VI.  Injury to personal reputation, naming DCI, Daniels and Musgrove;

 VII.  Intentional infliction of emotional distress, naming DCI, Daniels and Musgrove;

VIII.  Outrageous conduct, naming DCI, Daniels and Musgrove;

 IX.  Sex discrimination in violation of Iowa Civil Rights Act, Chapter 216 of Iowa Code, naming only DCI;[1]

  X.  Sex discrimination in violation of 42 U.S.C. section 2000e–2(a)(1), Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of

---

1. The amended complaint also named the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, Local Number 1201. The union was dismissed

1991, naming only DCI.[2]

The court grants summary judgment for Defendant DCI on Counts III, IX and X. All of the state tort claims against DCI, Musgrove and Daniels, are dismissed without prejudice to allow refiling in state court.

## I. SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is firmly established. Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990).

■ The moving party has the burden of asserting that the non-moving party is without the evidence to support a crucial element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The non-moving party then must present admissible evidence sufficient to withstand the motion for summary judgment. *Id.* at 324, 106 S.Ct. at 2553. The proof required is not precisely measurable, but the resisting party must produce enough evidence from which a jury might return a verdict in the resisting party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). The non-moving party may not rest solely on the content of the pleadings to show there is a genuine issue of material fact. *Id.* at 248, 106 S.Ct. at 2510.

■ The key to a motion for summary judgment is the determination of whether a fair-minded jury reasonably could return a verdict for the non-moving party based on the evidence presented. *Id.* The court must consider all evidence from each party in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A conflict between the parties' evidence ordinarily indicates a question of fact to be resolved by the jury. The court's function is not to weigh the evidence and determine the truth of the matter; rather the court must determine whether there is a genuine issue meriting a trial. *El Deeb v. University of Minnesota*, 60 F.3d 423, 429 (8th Cir.1995); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990).

■ Summary judgment is a drastic remedy which must be exercised with extreme care to prevent taking genuine factual issues from juries. *Wabun–Inini*, 900 F.2d at 1238. However, summary judgment is not a disfavored procedure but rather one designed to secure the just, speedy, and inexpensive determination of every action. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55.

## II. BACKGROUND FACTS

The following facts either are undisputed or are viewed in a light most favorable to the Plaintiff. *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir.1993).

Quick, a white heterosexual male, was hired by DCI in January of 1991 to work as a press operator in its Grinnell, Iowa production plant facility. Defendants Daniels and Musgrove have been employed as supervisors at DCI since August and September of 1991, respectively.

Quick contends that between August 1991 and August 1993, he was subjected by male co-workers to a continuing pattern of abuse and harassment. This harassment occurred both on and off the job and consisted of both physical and verbal assaults.

Quick has alleged several incidents of sexual harassment by various male co-workers. The first incident of harassment occurred on August 23, 1991, as Quick was leaving DCI's production facility following the end of his shift. Co-employee D.J. Wilder approached Quick from behind, grabbed his arms, picked Quick off the ground and yelled, "Bag him,

as a party by stipulation filed on February 14, 1995. (Pleading 55.)

2. Again, the Union was named in the Amended Complaint and later dismissed as a party to the action.

Kyle." Co-employee Paul Kyle, who was approximately 20 to 25 feet in front of Quick, turned and approached Quick who was still in the grasp of Wilder. Kyle then grabbed Quick's left testicle, causing him injury. Several days later, Quick reported the assault to his supervisor, Daniels. On August 28, 1991, Wilder was fired.

Quick also has complained of being "bagged" by other DCI employees. "Bagging" at the DCI plant, is either the "intentional grabbing and squeezing of another employee's testicles," or "when an employee uses his or her[3] hands to intentionally come into contact with another employee's groin area." (Plaintiff's Statement of Material Fact at 2; Defendants' Statement of Undisputed Facts at 4.) "Bagging" was not an uncommon event or practice at DCI. Between January 1991 and January 1992, Quick was "bagged" approximately 100 times by at least twelve different male co-employees. Quick, however, was not the only DCI employee who was "bagged." On many different occasions, DCI employees "bagged" other DCI employees, including those accused of "bagging" Quick.

Quick contends that on September 13, 1991, he was physically attacked by a male co-worker. On this date, Larry Carlson,[4] a DCI maintenance mechanic, was fixing a malfunctioning bending device. When Quick suggested to Carlson how to fix the device, Carlson retorted to Quick "Why don't you get the fuck out of here." After Quick replied that it was his work area, Carlson punched him in the neck.

Quick also has identified several incidents where male DCI employees suggested both orally and in writing that he had a homosexual orientation. In December of 1992, as Quick was entering the men's bathroom at Webster's Den, a local bar in Laurel, Iowa, co-employee Gary Gowan stated, "Watch that guy, he's gay." In that same month, Gowan wrote the word "Queer" on Quick's ID card at work and placed a tag on Quick's belt loop which stated "Gay and Proud." In December of 1992, Gowan and two other DCI employees Larry Morris and Tony Hall each placed one tag on Quick's forklift at work. Morris' tag stated: "pocket lizard licker." Quick cannot remember what was stated on Gowan's tag or Hall's tag. Quick does recall, however, that Gowan's tag made some reference to Quick being gay; Hall's tag made reference to some deviant activity with a cucumber.

## III. PROCEDURAL HISTORY

On August 19, 1993, Quick filed a suit in the Iowa District Court for Poweshiek County against Defendants, alleging only tort claims. On October 6, 1993, Defendant DCI filed motions to dismiss counts I, II, IV, VII, and VIII of Quick's state tort claims, arguing that Iowa Workers' Compensation Law preempted his claims. (Defs.' Motion to Dismiss, No. CL 465–0893.) On December 28, 1993, the district court denied Defendants' motions because it was arguable that Quick's injuries were not covered by workers' compensation law. (Ruling on Motions to Dismiss, No. CL 465–0893.) On January 20, 1994, Quick filed an amended and substituted complaint in the Iowa District Court for Poweshiek County, adding his federal and state claims of sex discrimination. In his amended complaint, Quick alleged that DCI's actions constituted sex discrimination in violation of 42 U.S.C. section 2000e–2(a)(1), Title VII of the Civil Rights Act of 1964, as amended by Civil Rights Act of 1991 and in violation of Iowa Civil Rights Act, Chapter 216 of the Iowa Code.

On February 7, 1994, this action was removed to this court. On February 17, 1994, Defendant DCI filed a motion to dismiss counts I, II, IV, VII, and VIII of Quick's amended complaint, arguing that Quick's claims were preempted by either the Iowa Civil Rights Act or the Iowa workers' compensation law. (Pleading 6.) On February

---

**3.** Male DCI employees do not have an exclusive license for "bagging." Though women are, technically speaking, unable to be "bagged," they are able to "bag" men. From the record, only one female DCI employee has reported that she was requested by a male DCI employee to "bag" him.

**4.** In the record Carlson also has been referred to as "Mr. Larry Carlton."

28, 1994, Defendants Musgrove and Daniels filed a motion to dismiss counts II, IV, VII, VIII, IX, and X of Quick's amended complaint, arguing that either the Iowa workers' compensation law or the Iowa Civil Rights Act preempted counts II, IV, VII, and VIII (Pleading 11.) Regarding Counts IX and X, Defendant Musgrove and Daniels argued that Quick's amended complaint did not name them as supervisors and thus, Quick did not exhaust the administrative procedure for seeking redress for an alleged civil rights violation. (Pleading 11.) On April 5, 1994, Quick filed a motion to amend his complaint to improve and correct the numbering of the Counts. (Pleading 24.)

On April 21, 1994, the trial court heard arguments on the resisted motions to dismiss. Defendants reiterated their previous argument that Iowa workers' compensation law or the Iowa Civil Rights Act preempted Quick's state tort claims. Defendants' motions to dismiss were denied pending completion of discovery, and Quick's motion to again amend his complaint was granted. (Pleading # 29.) The amended complaint was filed on May 5, 1994. (Pleading # 31.)

On March 20, 1995, the parties consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. section 636(c). On May 26, 1995, Defendants moved for summary judgment as to all of Quick's claims. These motions have been resisted. On July 10, 1995, argument on the motions was held. This matter is fully submitted.

## IV. CONCLUSION OF LAW

Defendant DCI moves for summary judgment on the grounds that: (1) sexual harassment of a male employee by male co-workers does not constitute prohibited discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, and (2) Quick's state tort claims are preempted by the Iowa workers' compensation law, Iowa Code chapter 85. Defendants Daniels and Musgrove also move for summary judgment on the ground that Quick's claims against them are barred by Iowa's statute of limitations.

### A. *Title VII and ICRA claims.*

Title VII of the Civil Rights Acts of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[5]...." 42 U.S.C. section 2000e–2(a)(1). Similarly, the Iowa Civil Rights Act provides that "[i]t shall be an unfair or discriminatory practice for any ... [p]erson to ... discriminate in employment ... because of the ... sex ... of such ... employee." Iowa Code § 216.6. Iowa courts adhere to the federal court's interpretation of Title VII. *Hy–Vee Food Stores v. Iowa Civil Rights Commission,* 453 N.W.2d 512, 517–19 (Iowa 1990). Quick's state civil rights claims will be determined along with his Title VII claims.

---

5. Despite some earlier confusion, most courts have recognized that "when Congress used the word sex in Title VII it was referring to a person's gender, and not to sexual practices." EEOC Dec. No. 76–75 (1976), Emp.Prac.Guide (CCH) ¶ 6495, at 4266; *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822, 832 (D.Md.1994) (courts treat the word "sex" as "gender"); *see J.E.B. v. Alabama ex rel. T.B.,* — U.S. —, —, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994) (interpreting the word "sex" to mean "gender" in an Equal Protection claim). *But see id.* at — n. 1, 114 S.Ct. at 1436 n. 1 (Scalia, J., dissenting) (refusing to interpret the word "sex" to mean "gender" because gender has "acquired the new and useful connotation of cultural or attitudinal characteristics (as opposed to physical characteristics) distinctive to the sexes. That is to say, gender is to sex as feminine is to female and masculine to male").

Courts recognize that:

> The words "sex" and "sexual" create definitional problems because they can mean either "relating to gender" or "relating to sexual/reproductive behavior." The two are not the same, but are certainly related and easily confused. Title VII only recognizes harassment based on the first meaning, although that frequently involves the second meaning. However, harassment which involves sexual behavior or has sexual behavior overtones (i.e., remarks, touching, display of pornographic pictures) but is not based on gender bias does not state a claim under Title VII.

*Vandeventer v. Wabash Nat'l Corp.,* 887 F.Supp. 1178, 1181 (N.D.Ind.1995) (denying reconsideration of *Vandeventer v. Wabash Nat'l Corp.,* 867 F.Supp. 790 (N.D.Ind.1994)).

This court adheres to the view that Title VII prohibits discrimination based upon one's gender (i.e., one's biological makeup), not necessarily on one's sexual behavior.

Within the past fifteen years or so, there has been much discussion and litigation regarding the scope of Title VII. *See, e.g., Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081, 1086 (7th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985) (Title VII does not cover transsexual sexual harassment); *Nogueras v. University of Puerto Rico,* 890 F.Supp. 60, 62–63 (D.P.R. 1995) (Title VII does cover heterosexual female-to-female sexual harassment); *EEOC v. Walden Book Co.,* 885 F.Supp. 1100, 1103–04 (M.D.Tenn.1995) (mem.) (Title VII does cover homosexual male-to-male sexual harassment by supervisor); *Roe v. K–Mart,* No. 93–2372, 1995 WL 316783, *2 (D.S.C. March 28, 1995) (Title VII does cover male-to-male harassment); *McCoy v. Johnson Controls World Serv., Inc.,* 878 F.Supp. 229, 232 (S.D.Ga.1995) (Title VII does cover homosexual female-to-female sexual harassment); *Myers v. City of El Paso,* 874 F.Supp. 1546, 1548 (W.D.Tex.1995) (Title VII does not cover heterosexual female-to-female sexual harassment); *Wright v. Methodist Youth Serv. Inc.,* 511 F.Supp. 307, 310 (N.D.Ill. 1981) (Title VII covers homosexual male-to-male sexual harassment by supervisor).

■ This case raises the issue of whether Title VII covers heterosexual male-to-male sexual harassment. Neither federal nor state courts in Iowa have addressed this issue. Courts have been unable to reach a consensus on this issue. Some courts have held that Title VII covers same-gender sexual harassment because but for plaintiff being male, the harassment would not have occurred. Others have held, based on a literal reading of Title VII, that same-gender sexual harassment is not the type of harassment meant to be prohibited. *Compare Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545, 1550–51 (M.D.Ala.1995) (same-gender sexual harassment covered) *with Polly v. Houston Lighting & Power Co.,* 803 F.Supp. 1, 6 (S.D.Tex.1992) (relying on *Goluszek v. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill.1988)) (same-gender sexual harassment not covered). Regardless of the particular method used to make a decision, courts consistently have examined the facts of each case carefully, and narrowly tailored a ruling to those facts. This court also has examined the facts at hand carefully, and has determined that it need not address such corollary issues as mentioned above, because heterosexual male-to-male harassment may present issues different from homosexual male-to-male sexual harassment.

Confusion surrounds Title VII's scope and wording, in part, because there is "little legislative history to guide" courts. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 62, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986). However, over the years, it has become clear that Title VII's goal is to provide an "equal employment opportunity" for members of disadvantaged and vulnerable groups. *Connecticut v. Teal,* 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982). In enacting Title VII, Congress intended to ensure that employers treated disadvantaged groups and non-disadvantaged groups alike. Historically, disadvantaged and vulnerable groups were comprised primarily of women and minorities who, until recently, were prevented from entering or advancing in the job market. However, to view all women as victims and all men as discriminators is a dangerous stereotype. Men, by the very fact that they are not women, should not be automatically excluded from being considered disadvantaged or vulnerable.

■ Title VII protects both male and female employees from discriminatory sexual harassment. *Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404. (recognizing that Title VII "[e]vinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women"); *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1211 (D.R.I.1991) (stating that male employees making a quid pro quo sexual harassment claim are considered "members of a 'protected group'"). Therefore, male employees are afforded Title VII protection if they can show they are members of a disadvantaged or vulnerable group (i.e., if they are working in an anti-male environment or predominantly female environment). Because Title VII is "aimed at a gender-biased atmosphere; an atmosphere of oppression by a dominant gender," it does not focus solely on the question of whether the victim is male or female;

instead it determines whether the victim, male or female, was working in a discriminatory "atmosphere of oppression by a dominant gender." *Goluszek,* 697 F.Supp. at 1456; *see also Vandeventer,* 887 F.Supp. at 1182 (N.D.Ind.1995) ("[i]t is being the victim of anti-male or anti-female bias that forms the basis of a Title VII sexual harassment claim, not simply being exposed to 'sexual' type comments or behavior"). In short, the focus is on disparate treatment of one gender.

■ Therefore, the inquiry under Title VII in determining whether an individual, male or female, is disadvantaged or vulnerable is to ascertain whether the environment is anti-male or anti-female. An environment that is anti-male or anti-female is one where "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993); *see also Scott v. Sears,* 798 F.2d 210, 213 (7th Cir.1986) ("harassment becomes discriminatory ... [when] ... it deprives the victim (usually female) of the right to participate in the workplace on an equal footing with others similarly situated").

■ Though there is little legislative history regarding Title VII, the wording of the statute is clear: employers have an affirmative duty to provide an equal employment opportunity for members of disadvantaged and vulnerable groups. By the same token, Title VII also is clear in what is considered to be actionable gender discrimination. Under Title VII, gender discrimination is an unlawful employment practice. Sexual harassment standing alone is not prohibited by Title VII. *See generally Vandeventer,* 887 F.Supp. 1178 (N.D.Ind.1995) ("There is no law specifically outlawing sexual harassment"); *Hopkins,* 871 F.Supp. 822, 832

(D.Md.1994) ("Title VII by its terms prohibits sex discrimination, not sexual harassment").

Thus, sexual harassment is covered under Title VII only if it is a form of sex discrimination; it must be discriminatory and must be of a genuine sexual nature. "[N]ot every unwelcome contact in the workplace or elsewhere can be characterized as sexual, and to constitute sexual harassment, the alleged contact must be just that: sexual." *Parrish v. Washington,* 1990 WL 165611, at *3 (N.D.Ill. Oct. 16, 1990). Accordingly, "absent a base in gender discrimination, there can be no actionable sexual harassment." *Vandeventer,* 887 F.Supp. at 1180 (N.D.Ind.1995).

In this case, the physical contacts were not discriminatorily based upon Quick's gender. There is no evidence to show or even to raise a material question of fact that the unwelcome physical contacts discriminatorily affected Quick's compensation, terms, conditions, or privileges of employment. Therefore, Title VII is not applicable to this case.[6]

■ Limited in its scope, Title VII does not offer a blanket prohibition on abuse or harassment that occurs in the workplace. As the court found in *Goluszek:*

> Title VII does not make all forms of harassment actionable, nor does it make all forms of verbal harassment with sexual overtones actionable. The "sexual harassment" that is actionable under Title VII is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person.

697 F.Supp. at 1456 (quoting Note, "Sexual Harassment Claims of Abusive Work Environment Under Title VII," 97 Harv.L.Rev. 1449, 1451 (1984). Adhering to the purpose and requirements of Title VII, this court finds that even though he was harassed and bothered by male co-workers, Quick's claim of hostile-environment sexual harassment un-

---

6. This court is not holding that Title VII never protects same-gender sexual harassment. This court does not "mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women would not also be actionable *in appropriate cases.*" *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (emphasis added).

Clearly, "the victim does not have to be of the opposite sex from the harasser." EEOC Compliance Manual section 615.2(b)(3). But, Title VII does not apply in every harassment action. Using a case-by-case approach, courts must determine whether the type of sexual harassment of which the plaintiff complains is discriminatory.

der Title VII fails. It is undisputed that some form of harassment took place at DCI. This type of harassment, however, is not covered by Title VII because it was not discriminatory sexual harassment, that is, it was not done because of Quick's gender. Male-to-male harassment without any discriminatory treatment is not prohibited by Title VII. *See Goluszek*, 697 F.Supp. at 1456; *Vandeventer*, 887 F.Supp. 1178 (N.D.Ind.1995). Quick was not a victim of gender discrimination; instead, he was a victim of unnecessary juvenile behavior by aggressive male co-workers. There is no evidence to show that Quick was subjected to discriminatory sexual harassment because he was male.

Because there is no evidence to show that Quick was working in either an anti-male environment or a predominantly female environment, he cannot be considered a member of a disadvantaged or vulnerable group at DCI. Additionally, there is no evidence to show that female DCI employees were being treated differently and in a more favorable manner than Quick. As a male in a male-dominated environment, Quick cannot successfully complain that he was discriminated against based upon his gender. The only evidence that points to Quick being treated differently is that he, rather than any other individual, was punched in the neck by Carlson. However, such an unfortunate altercation does not suggest discriminatory sexual harassment; instead it suggests that Quick was unpopular with physically aggressive male co-workers.

Furthermore, the type of harassment of which Quick complains is not only non-discriminatory, but also not of a genuine sexual nature. Clearly, being attacked by Carlson did not involve any sexual suggestions or interests. The aspects of "bagging," however, are more complex than the physical attack by Carlson. To say "bagging" is merely horseplay is to trivialize its cruel and physical nature. Yet, to say "bagging" is purely a sexually motivated activity exaggerates the sexual component involved. The only thing sexual about "bagging" is that the aggressor aims his non-sexual aggression at genitals. "Bagging" did not happen because male DCI co-workers were demanding sexual favors, were expressing sexual interest, or making sexual comments regarding Quick's gender.

Under Title VII, employers have an affirmative duty to maintain a working "environment free of discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2405. Plaintiff's claim unjustifiably enlarges the scope of Title VII by imposing an affirmative duty on employers to maintain a working environment free of all non-discriminatory juvenile mischief and immature behavior. Absent a congressional mandate to cover this type of case, this court declines to expand the scope of Title VII. Adherence must be given to the plain meaning of the statute. *See Perrin v. United States*, 444 U.S. 37, 50, 100 S.Ct. 311, 318, 62 L.Ed.2d 199 (1979).

Other courts also have declined to increase the scope of Title VII to cover certain instances of same-gender sexual harassment. *Garcia v. Elf Atochem N. America*, 28 F.3d 446, 451 (5th Cir.1994) ("harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones"); *Benekritis v. Johnson*, 882 F.Supp. 521, 525 (D.S.C.1995) (male plaintiff did not have a Title VII claim, even though a fellow male teacher had touched him in the genital area); *Vandeventer v. Wabash Nat'l Corp.*, 867 F.Supp. at 796, *reconsideration denied*, 887 F.Supp. 1178 (N.D.Ind.1995) (male employee alleging sexual harassment by male supervisor cannot maintain his Title VII claim); *Hopkins*, 871 F.Supp. at 834 (Title VII "does not provide a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or co-worker of the same gender"); *Polly*, 803 F.Supp. at 4 (summary judgment against a male worker who had been forcibly kissed on the mouth, and grabbed in the genital area by male co-workers); *Goluszek*, 697 F.Supp. at 1456 (harassment of a male employee by male co-workers did not create an anti-male environment and did not present actionable sexual harassment under Title VII). *But see Morgan v. Massachusetts Gen. Hosp.*, 901 F.2d 186, 192 (1st Cir.1989) (African–American male employee had a cause of action for

sexual harassment under Title VII against Hispanic male co-worker); *Joyner v. AAA Cooper Transp.*, 597 F.Supp. 537, 542 (M.D.Ala.1983), *aff'd mem.*, 749 F.2d 732 (11th Cir.1984) (male plaintiff who refused unwelcome homosexual advances had established a prima facie violation of Title VII); *Wright*, 511 F.Supp. at 310 (male plaintiff who had been sexually propositioned by his homosexual male supervisor presented a viable cause of action).

■ Given the number of times male co-workers taunted Quick about being homosexual, it is possible to conclude that male co-employees targeted Quick because they were under the false impression that he was gay. Assuming this to be the case, there is still no Title VII protection because Title VII applies only to "discrimination on the basis of gender and should not be judicially extended to include sexual preferences such as homosexuality." *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 329–30 (9th Cir.1979) (cited with approval in *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir.1989)); *see also* Iowa Code Chapter 216.6(1)(a) (no protection for sexual orientation).

This court finds that Title VII protection does not apply in this case, and that Counts IX and X should be dismissed. Plaintiff alleges non-discriminatory harassment by physically aggressive male co-workers, who harass the victim not based on his gender but because of personal enmity or hooliganism.

Ideally, every workplace would be free of insult, ridicule, and personal animosity, and all workers would be treated with respect, courtesy, and decency. Such a world, if it is ever to exist, cannot be manufactured by courts. Title VII does not purport to dictate the exact manner or behavior employers must exhibit toward employees. It simply provides a level playing field for groups that traditionally were disadvantaged.[7]

### B. *State Claims*

Having concluded that Title VII does not apply to this case, this court now considers whether Quick's eight state claims should be dismissed pursuant to 28 U.S.C. § 1367.

For the reasons set forth below, summary judgment is granted on count III. As for Quick's remaining state claims against DCI, and Musgrove and Daniels, all counts are dismissed without prejudice.

### C. *Count III: Violation of Iowa Code section 730.5*

■ Under Iowa law, employers must abide by strict regulations when testing employees for controlled substance usage. Quick claims that DCI violated Iowa Code section 730.5 (1991) when it ordered a blood test to determine whether he was using drugs. The facts are clear and undisputed. DCI Plant Superintendent Schoen recommended to Quick that he have a Magnetic Resonance Imaging (MRI) procedure be-

7. Quick cites a number of authorities in support of the proposition that Title VII clearly covers same-gender sexual harassment. Quick's cases, however, are distinguishable from this case, in that some of them involve opposite sex claims brought by female subordinates against male supervisors. *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269–70 (8th Cir.1993) (female nurse sued male doctor who directed his sexual abuse towards female workers, and directed his verbal non-sexual abuse towards both female and male workers); *Burns v. McGregor Electron. Indus., Inc.*, 955 F.2d 559, 561–62 (8th Cir.1992) (unwelcome sexual advances made to a female employee by her male boss); *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1012 (8th Cir.1988) (female road construction workers subjected to sexual harassment by male co-workers and supervisors); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1461–62 (9th Cir.1994) (female employee sued male supervisor who directed sexual epithets to only female worker); *Chiapuzio v. BLT Operating*

*Corp.*, 826 F.Supp. 1334, 1337 (D.Wyo.1993) (even though male supervisor's verbal harassment allegedly was directed at both male and female employees, he only directed his remarks concerning his "sexual prowess" and "sexual acts he desired" to female employees).

The rest of Quick's cases involve claims different from the one presented in this case. *McCoy*, 878 F.Supp. at 231–32 (noting homosexual female-to-female sexual harassment can violate Title VII); *Prescott*, 878 F.Supp. at 1550–51 (homosexual quid pro quo sexual harassment is actionable under Title VII); *Roe*, 1995 WL 316783, *2 (homosexual male supervisor made sexual advances to male homosexual employee); *Mogilefsky v. Superior Court*, 20 Cal.App.4th 1409, 1418, 26 Cal.Rptr.2d 116, 121 (1993) (male employee had cause of action for sexual harassment, both quid pro quo and hostile environment, in violation of the Fair Employment and Housing Act against homosexual male supervisor).

cause he was experiencing back problems. DCI scheduled an appointment for Quick with Dr. Wehr, a licensed physician with Grinnell Family Health Group. On February 23, 1993, Dr. Wehr examined Quick. During this examination, blood was drawn so that an outside lab could conduct an "arthritic profile," a test to determine whether there is arthritis in the joints. DCI did not order a blood test to determine whether Quick was using drugs. Therefore, because there are no genuine issues of material fact in dispute as to this issue, summary judgment is appropriate because there was no violation of Iowa Code section 730.5.

## V. ORDER

The facts of this case, when viewed in the light most favorable to the Plaintiff, do not support claims in Counts IX and X for sex discrimination in violation of 42 U.S.C. section 2000e–2(a)(1) or the Iowa Civil Rights Act, Chapter 216, the Iowa Code; these claims are dismissed.

There are no material facts in dispute, and no factual or legal basis for Plaintiff's claims in count III; that count also is dismissed.

Pursuant to 28 U.S.C. § 1367(c)(3), this court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims. The remaining state claims are dismissed without prejudice for lack of subject matter jurisdiction. The clerk is directed to enter judgment in favor of defendants. Plaintiff has 30 days to refile his claims in state court.

It is unfortunate that the delay in filing the motion for summary judgment on the jurisdictional question results in this case having such a tortured procedural history and in this case being whipsawed between federal and state courts. However, the state law issues are best left for the resolution by state courts. Accordingly, for the reasons stated above, the court grants Defendants' motions for summary judgment on Counts III, IX, and X and dismisses the remaining state claims without prejudice.

IT IS SO ORDERED.