692 A.2d 131

WILLIAM ZALEWSKI, PLAINTIFF v. OVERLOOK
HOSPITAL, DEFENDANT.

Superior Court of New Jersey
Law Division Civil Action
Union County

Decided January 29, 1996.

*Francis X. Riley, III,* for plaintiff (*Hartlaub, Dotten, Connelly & Terry, Townsend & Manfredi*).

*James E. Patterson,* for defendant (*Carpenter, Bennett & Morrissey*).

MENZA, J.S.C.

This is a motion for summary judgment.

The case involves the novel question of whether the New Jersey Law Against Discrimination ("LAD") (*N.J.S.A.* 10:5-1 through -42.) applies to sexual harassment of a heterosexual by other heterosexuals in the work place when the harassment is based upon gender stereotyping.[1]

These are the facts:

Plaintiff commenced his employment with defendant, Overlook Hospital, in 1976 when he was seventeen-years old. Five years later, he began working in defendant's Receiving Department and continued to work there until April 1995, when he was transferred to the Linen Department, where he now works.

In 1993, plaintiff's co-workers in the Receiving Department began to harass him, apparently because they believed him to be a virgin. They confronted him with the slang terms "whack'o," "jerk-off," and "3–5, 3–5," thus insinuating that the plaintiff masturbates in lieu of having sex with women. The co-workers also placed pictures with captions on plaintiff's desk and in his locker

---

[1] Gender stereotyping is the assigning of certain behavior characteristics as appropriate for women and for men but not for the other sex. Mary Anne C. Case, *Disaggregating Gender from Sex and Sexual Orientation: The Effeminate Man in the Law and Feminist Jurisprudence,* 105 *Yale L.J.* 1, 58 (1995) (quoting *Dillon v. Frank,* Empl.Prac.Dec. (CCH) ¶ 41, 332, 70, 105, n. 3 (6th Cir.1992)).

which made reference to plaintiff's lack of sexual relations with women. These pictures included a picture of a kitten with a caption that stated "the only pussy Bill has ever gotten"; a picture of a puppy with a caption which stated "I'm Billy's girl", and an altered photo which depicts plaintiff holding a Penthouse magazine, presumably looking at a naked woman, and stating "Wow! Is this what it looks like? How gross. I'll never touch anything like that. Ughhhh!" At no time did the co-workers suggest plaintiff's sexual orientation might be other than heterosexual, and there is no evidence plaintiff is homosexual or bisexual.

Plaintiff made numerous and continuous complaints regarding the harassment to his co-workers, to his immediate supervisors, and to the hospital Personnel Department. However, the harassment continued and eventually the employees of the other departments in the hospital also began to harass plaintiff about his lack of sexual relations with women.

Plaintiff has filed suit alleging a hostile environment in violation of LAD based on gender stereotyping sexual harassment.

The New Jersey LAD prohibits employment discrimination based on sex, or affectional or sexual orientation. The pertinent sections of that statute provide:

> It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:
> (a) For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex ... of any individual ... to refuse to hire or employ or to bar or to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....
>
> [*N.J.S.A.* 10:5–12.]

"Affectional or sexual orientation" is defined as follows:

> "Affectional or sexual orientation" means male or female heterosexuality, homosexuality or bisexuality by inclination, practice, identity or expression, having a history thereof *or being perceived, presumed or identified by others as having such an orientation.* (emphasis added)
>
> [*N.J.S.A.* 10:5–5(hh).]

■ Defendant now moves for summary judgment, contending that the statute is inapplicable to the facts of this case because it

does not encompass the sexual harassment of heterosexuals by other heterosexuals.

The New Jersey Supreme Court in *Lehmann v. Toys 'R' Us, Inc.*, 132 *N.J.* 587, 626 *A.*2d 445 (1993), set forth the test for hostile work environment sexual harassment claims:

> To state a claim for hostile work environment sexual harassment, a female plaintiff must allege conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment. For the purposes of establishing and examining a cause of action, the test can be broken down into four prongs: the complained-of conduct (1) would not have occurred but for the employees's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.
>
> [*Id.* at 603–04, 626 *A.*2d 445.]

It is clear that a reasonable jury in this case could conclude that the harassment of plaintiff, considering its pervasive nature and continuity, satisfies the second, third and fourth criteria of the *Lehmann* test.[2] The question that must be determined by this court is whether a reasonable jury could find that the first criterion of the standard has been met in this case where the nature of the sexual harassment is same-sex gender stereotyping.

In *Lehmann* the court clearly indicated that the sexual harassment of men by other men is actionable under LAD.

The Court stated:

> In this case, we discuss the standard assuming a female plaintiff, because in both the present case and the majority of cases, the plaintiff is a woman. *However, the standard we announce today applies to sexual harassment of woman by men, men by women, men by men, and women by women. The LAD protects both men and women and bars both heterosexual and homosexual harassment.*
>
> [*Id.* at 604. (emphasis added)]

However, neither *Lehmann* nor any other New Jersey case provides an explanation as to what is meant by "sexual harass-

---

[2] "The only difference in the standard would be that a male plaintiff would have to allege conduct that a reasonable man would believe altered the conditions of his employment and created a working environment that was hostile to men." *Lehmann* at 604, 626 *A.*2d 445.

ment of . . . men by men," and it is, therefore, unclear whether the Supreme Court meant its holding to apply only to the harassment of a homosexual by a heterosexual and vice versa, or whether the court meant it to apply as well to the harassment of a heterosexual by other heterosexuals.

This court has made a thorough search of the law, but is unable to locate any case, in New Jersey or elsewhere, that has squarely addressed the issue of whether male-on-male sexual harassment based solely upon gender stereotyping is actionable. There are, however, numerous federal cases that have addressed same-sex harassment in the context of Title VII of the Civil Rights Act of 1964 (42 *U.S.C.A.* § 2000e *et seq.*) and they are helpful in the determination of this case. New Jersey courts have traditionally looked to the Title VII cases as a "key source of interpretive authority" when dealing with claims under the LAD. *See Grigoletti v. Ortho Pharmaceutical Corp.*, 118 *N.J.* 89, 97, 570 *A.*2d 903 (1990).

Title VII provides:

> It shall be an unlawful practice for an employer—(1) to . . . discriminate against any individual with respect to his . . . sex. . . .

> [42 U.S.C.A. § 2000e–2.]

The federal cases interpreting this act, which is not as broad as the New Jersey statute, are split on the issue of whether same-sex sexual harassment is actionable under Title VII. A few federal courts have concluded that Title VII is limited to male-female harassment. The seminal case for this view is *Goluszek v. Smith*, 697 *F.Supp.* 1452 (N.D.Ill.1988). There, the plaintiff brought suit against his employer contending it refused or failed to remedy and control the continuous sexual harassment directed towards him by fellow employees. The court, in dismissing Goluszek's claim, conceded that Goluszek may have been harassed because he is male, but held that this kind of harassment was not the type of conduct Congress intended to prohibit when it enacted Title VII.

It stated:

Simply stated, the defendant's conduct was not the type of conduct Congress intended to sanction when it enacted Title VII.

[*Id.* at 1456.]

Goluszek may have been harassed because he is a male, but that harassment was not the kind which created an anti-male environment in the workplace. A wooden application of the verbal formulations created by the courts would salvage Goluszek's sexual-harassment claim. The court, however, chooses instead to adopt a reading of Title VII consistent with the underlying concerns of Congress.

[*Id.* at 1457.]

Similarly, in *Hopkins v. Baltimore Gas & Elec. Co.*, 871 *F.Supp.* 822 (D.Md.1994) the court stated:

[T]his court holds that Title VII does not provide a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or coworker of the same gender. Title VII prohibits discriminatory conduct on the basis of gender and evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women. Where, as here, the alleged harasser and the alleged victim are both of the same gender, the language of the statute would be strained beyond its manifest intent were the court to hold that under these facts there has been discrimination because of . . . sex.

[*Id.* at 834 (citations omitted).]

*See also, Garcia v. Elf Atochem North America* 28 *F.*3d 446 (5th Cir.1994); *Quick v. Donaldson Co. Inc.*, 895 *F.Supp.* 1288 (S.D.Iowa 1995); *Benekritis v. Johnson*, 882 *F.Supp.* 521 (D.S.C. 1995), *Myers v. City of El Paso*, 874 *F.Supp.* 1546 (W.D.Tex.1995).

The majority of the federal courts addressing the scope of Title VII, however, have refused to limit its application to male-female harassment and have held that discrimination based on sexual harassment includes not only male-female harassment but also same-sex harassment. These cases make it clear that Title VII protects all employees from all manner of sexual harassment that creates an offensive or hostile environment, irrespective of the gender of the parties. The test is only whether one has suffered harassment because of his or her sex, that is, because she is a woman or he is a man.

In *Wright v. The Methodist Youth Services, Inc.*, 511 *F.Supp.* 307 (N.D.Ill.1981) the court, in a case involving *quid pro quo* homosexual harassment, held that the discharge of a male because he rejected advances made by his male supervisor is a violation of

Title VII. The court based its holding on the case of *Barnes v. Costle*, 561 *F.*2d 983, 990 n. 55 (D.C.Cir.1977) in which the court stated:

It is no answer to say that a similar condition could be imposed on a male subordinate by a heterosexual female superior, or by a subordinate of either gender by a homosexual superior of the same gender. In each instance, the legal problem would be identical to that confronting us now—the exaction of a condition which, but for his or her sex, the employee would not have faced.

[*Id.* at 310.]

In the case of *Polly v. Houston Lighting and Power Co.*, 825 *F.Supp.* 135 (S.D.Tex.1993) the court concluded that Title VII was applicable to sexual harassment of one person by another of the same sex even though the court disallowed the plaintiff's claim on the basis of insufficient proofs. In reaching the conclusion that Title VII does encompass same-sex harassment, the court stated:

[t]he cases nonetheless provide support for the conclusion that Title VII was intended to apply to claims of harassment based on sex, without regard to the gender of the complainant or the harassing party. Such a conclusion finds further support in the EEOC's compliance manual, which states, "a man as well as a women may be the victim of sexual harassment". The EEOC manual concludes, at § 615.2(b)3:

The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where for instance, the sexual harassment is based on the victim's sex ... and the harasser does not treat employees of the opposite sex the same way.

[*Id.* at 137. (citations omitted)]

In *Blozis v. Mike Raisor Ford, Inc.*, 896 *F.Supp.* 805 (N.D.Ind. 1995), the court, in holding that a male-on-male claim for sexual harassment was actionable under Title VII, wrote:

This court believes that the common basis of all relevant caselaw in this area is the proposition that Title VII addresses *gender-based* harassment and *gender-based* hostile environment; in other words, gender bias. The EEOC's Compliance Manual, § 615.2(b)(3) states that "the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex," whether or not the victim is of the opposite sex from the harasser. That means that a man can state a claim under Title VII for sexual harassment by another man *only* if he is being harassed *because* he is a man. There may or may not be homosexual aspects to such harassment. There may or may not be hatred of one's own gender involved.

[*Id.* at 806–07.]

It is being the victim of anti-male or anti-female bias that forms the basis of a Title VII sexual harassment claim, not simply being exposed to "sexual"-type comments or behavior. Title VII is meant to rectify gender bias in the workplace, not per se to outlaw foul mouths or obscenities. Sometimes sexually-explicit comments are evidence of or constitute gender bias, and sometimes not. Absent extenuating circumstances, it would seem difficult to prove that sexually explicit words or conduct between men would demonstrate an anti-male atmosphere. Difficult, but not impossible, which dooms for the time being this motion to dismiss.

If the plaintiffs can prove that they were discriminated against because they were men, then they can state a claim under Title VII. Plaintiffs allege that defendant Glick's sexual harassment of them was "of a homosexual nature." Whether or not that was the case, if the defendant harassed and discriminated against the plaintiffs *because* they were men, the plaintiffs can state a claim.

[*Id.* at 808.]

Numerous other federal district courts have held that same-sex harassment claims are actionable under Title VII. *See, e.g., King v. M.R. Brown, Inc.,* 911 *F.Supp.* 161 (E.D.Pa.1995) and the cases cited therein.

The majority view reflects the broad and liberal interpretation accorded Title VII by the federal courts in order to effectuate the Act's purpose of eliminating sexual harassment in the workplace, and in doing so provides distinct direction to state courts to interpret their own statutes in similar fashion.

The facts of this case, involving as it does gender stereotyping, do not fit precisely within the holdings of the federal cases. Actually, these facts have not been addressed in any federal or state case. However, the United States Supreme Court in the case of *Price Waterhouse v. Hopkins,* 490 *U.S.* 228, 109 *S.Ct.* 1775, 104 *L.Ed.*2d 268 (1989), has addressed the question of discrimination on the basis of gender stereotyping, and has held that discrimination based on gender stereotyping falls within the prohibition of Title VII. In that case the court found that an employer's failure to promote an employee because she was perceived as less than feminine was gender stereotyping and, a form of discrimination under Title VII. In doing so, it made clear that Title VII

is to be liberally and expansively interpreted in order to insure its purpose of eliminating sexual discrimination in the work place.

It wrote:

As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group for in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.
[*Id.* at 251, 109 *S.Ct.* at 1791 (citations omitted).]

Although *Price Waterhouse* dealt with female stereotyping, its rationale and logic are equally applicable to discrimination based on male stereotyping. In fact, in a law review article entitled "Disaggregating Gender from Sex and Sexual Orientation: The Effeminate Man in the Law and Feminist Jurisprudence", Professor Maryann C. Case strongly suggests just that. *See supra* note 1.

The author states:

This is strong evidence in support of a central claim of this Article—that categorical gender discrimination (for example, across-the-board discrimination against all persons, male or female, who display feminine characteristics or who lack masculine ones) raises issues of central concern to the equality of the sexes and should be analyzed as sex discrimination.

The argument that Title VII does not or should not protect men to the same extent as women is a particularly difficult one for opponents of the effeminate man to make. Not only is it settled law that Title VII protects both men and women from discrimination on the basis of sex, the case of the effeminate man would be a peculiar one in which to argue for an exception from the equal protection of men, because the very characteristics for which he is being penalized are those associated with woman, the subordinated group the statutory language was principally designed to protect. If women were protected for being masculine but men could be penalized for being effeminate, this would, in my view, send a strong message of subordination to women, because it would mean that feminine qualities, which women are disproportionately likely to display, may legitimately be devalued although masculine qualities may not.

[*Id.* at 34.]

Here, plaintiff's co-workers harassed plaintiff because they believed him to be a virgin and effeminate. A jury could therefore conclude that plaintiff's co-workers discriminated against him because he was a male who did not behave as they perceived a male should behave, i.e., that they discriminated against him based on

gender stereotyping. In light of *Price Waterhouse* and guided by the majority view of the federal cases interpreting Title VII, this court is of the opinion that the male-on-male sexual harassment in the instant case is a form of discrimination prohibited by the LAD and as such is actionable.

Aside from the federal cases that guide this court in concluding that the LAD applies to the facts of this case, it is the plain language of the LAD that also dictates its applicability.

The New Jersey Legislature amended the LAD to prohibit discrimination based on sex after Title VII was enacted, and thus, had the benefit of the federal court decisions interpreting that statute. Unlike Title VII, New Jersey's LAD includes an express prohibition against discrimination based on sexual orientation. And it specifically includes not only discrimination because of one's sexual orientation, but discrimination based on one's *perception* of another's sexual orientation, as well.

In other words, the New Jersey LAD provides a remedy to anyone who is sexually harassed because of that person's sexual orientation or because the person is perceived or presumed to be of a certain sexual orientation. Clearly, the expanse of the statute demonstrates a legislative intent to encompass in its prohibition any sexual harassment that results in a hostile work environment, including discrimination based on gender stereotyping. The statute clearly encompasses the facts of this case.

This is obviously not a classic case of sexual harassment. It is unique. However, to deny plaintiff's cause of action is to insulate defendants from a statute that has as its obvious intent the elimination of sexual harassment in the workplace. There is no rhyme or reason for allowing sexual harassment claims by men against women, women against men, and harassment because of one's sexual orientation and yet permit and condone severe sexual harassment of a person because he is perceived or presumed to be less than someone's definition of masculine. After all, "Sexual harassment from employees of the same sex does not diminish the

severity of the discrimination conduct or the harm it produces." (Plaintiff's Brief at 13).

Taking into account the reasoning of the majority of the federal cases which have addressed similar issues, the United States Supreme Court's reasoning in *Price Waterhouse*, the broad language of the LAD and its dictate that it is to be liberally construed (*N.J.S.A.* 10:5–3), as well as a common sense approach that no one should be subject to sexual harassment that creates a hostile workplace, this court concludes plaintiff does in fact have a cause of action for sexual harassment under the LAD. Defendant's motion to dismiss the LAD claim is denied.